## MALCOLM McLOUD, TRUSTEE, *v.* ABBIE B. HALL, ET AL.

### Plymouth, November, 1904.

*Easements — Implied from Plan — Estoppel — Determined by Abandonment.*

The land in controversy in this case is a portion of a thirty-seven acre tract on the shores of Hull bay which about forty years ago became the scene of an elaborate, abortive and more or less fraudulent land boom. The land was then, as to a great extent it still remains, a large cleared field, which had formed a part of an ancient farm. It lies on a hillside distant from the settled portion of the town, and separated even from the summer residences and public streets by fields and woods. It has a fine outlook over the bay. In 1874 it was purchased by some speculators, who had drawn and recorded an elaborate plan showing a very large number of small house lots, divided by streets, alleys and spaces reserved for prospect and access to the sea; and then by various devices, including the use of a straw man bearing the same name as a well known Bostonian, secured a large mortgage, and sold a considerable number of the "lots." In addition to the recorded plan, these lots were staked off upon the ground, and some of the "streets" were further marked out by removing the sods. The boom quickly collapsed, however, and except for the foreclosure of the mortgage after sundry partial releases therefrom had been given, a few transfers, and some tax sales, nothing more was done in furtherance of the original scheme. Within the past few years summer residences have been built near by, and two houses have been erected

on the thirty-seven acre tract itself, but without any regard to the lot or street lines of the plan. Access is obtained thereto by a private street.

The petitioner owns a tract of land on the water front which covers a large number of the original lots, and seeks registration of title free from any easements of streets or alley ways arising under the recorded plan. The respondents own other lots shown on said plan, and claim rights of way, not by express grant, but by implied easements arising from the language of their deeds wherein their respective premises were bounded by the streets and alley ways shown on said plan, not only from their lands by a reasonable way, provided and admitted by the petitioner, out to a public street, but in all of the streets and ways shown on said plan, and especially in the one running along the front of the petitioner's tract by the shore, and with access therefrom to the sea.

The doctrine of implied easements is entirely a doctrine of estoppel. There is no question about the general rule, or about the cases which are cited by the respondents. The estoppel in these cases, however, like all other cases of estoppel, as is manifest from the decisions, rests upon the general principle that a man who has obtained a valuable consideration from another in consequence, in whole or in part, of assurances or conduct whereby the other was given directly to understand, or was justified in presuming, that he should receive certain rights or advantages, is thereby estopped from denying to the other the benefit thereof. Parker v. Smith, 17 Mass. 413. Farnsworth v. Taylor, 9 Gray 162. Rodgers v. Parker, 9 Gray 445. Fox v. Union Refinery, 109 Mass. 292. Boland v. St. John's Schools, 163 Mass. 229.

The language of the court in some of the cases, notably in Farnsworth v. Taylor, goes to the full length for which the respondents contend. The facts in all of these cases differ materially however from those in the case at bar. The

difference is not merely that in the present case none of the streets or ways were ever in actual existence on the ground. Whether there are or are not any actual decisions on the point, there are plenty of dicta, and it is clearly within the general principle, that an implied easement that there shall be a way enures to the benefit of the grantee and his successors in title as against the grantor and those having privity with him, whether the way was ever in existence or not. Crowell v. Beverly, 134 Mass. 98.    Driscoll v. Smith, 184 Mass. 221.   McKenzie v. Gleason, 184 Mass. 452.   There are no cases, however, in which an easement of a way is to be implied where it is of no advantage to the estate of the grantee and those in privity with him.   Such a case is entirely outside the principle of estoppel.   Where there is an elaborate system of ways, or a diversity of easements, such ways and such easements only are held to be created by estoppel as are necessary to a reasonable and advantageous use of the premises granted.   Regan v. Boston Gas Light Co., 137 Mass. 37.   Pearson v. Allen, 151 Mass. 79.   Loehr, Petitioner, Land Court Decisions, p. 46, ante.   Central Wharf v. India Wharf, 123 Mass. 567.   Bangs v. Potter, 135 Mass. 245.

In the case at bar not only are the ways and easements claimed not in existence on the ground, but many of them are impracticable- and some of them are impossible.   The whole scheme, so far as its essential elements are concerned, is, and always was, purely a paper scheme.   That the respondents are entitled to a reasonable way out from their land to the public street is undeniable, but that the entire scheme in accordance with which the respondents originally purchased their lots should be held to be still binding upon all the lots into which this tract was theoretically divided, would be, instead of a benefit, a hopeless burden upon all of the property, including that of the respondents themselves.

The fact that the scheme which the respondents insist upon

is one which would render the entire tract unmarketable and useless for the future as in the past, is a fact which must be taken into consideration by the court. That the streets obviously cannot be built upon the ground as a physical matter in accordance with the plan; that some of them would be useless if they were built; that the entire tract is, always has been, and apparently will continue to be hopelessly unadapted and unadaptable to use for the scheme represented by the plan, is evident from an inspection of the premises.

It is argued by the respondents that nothing has actually changed in the situation, however, in the thirty years since the scheme was originally laid out, or since the respondents purchased their lots; and that there has been no abandonment such as is manifested in the reported cases where restrictions and easements have been held to be determined by a change in the character of the locality. It is true that there have been no active steps taken by the respondents whereby they in turn are estopped from claiming their original rights. But they purchased their lots in accordance with a scheme looking to the immediate development of the entire tract; they were parties to, and relied upon, a staking out of portions of the roads called for by the plan, and to some slight beginning toward the construction of such roads by the removal of the top sod from parts of them; and thereafter they sat still and saw the stakes disappear, the proposed roads go back into grass lands, portions of the original tract built upon, fenced and occupied in entire disregard, and to the exclusion, of some of the streets as planned, lots repeatedly sold for taxes, some of these tax titles being acquired by the petitioner, and the whole scheme generally allowed to lapse for thirty years into desuetude, all without protest or action on their part. See Snow v. Hutchins, 160 Mass. 111. Under all the circumstances of the case I think the respondents are not in a position to insist (in spite of a lack of positive acts

by them ordinarily necessary to an actual estoppel) upon a claim, as against other individual lot owners including this petitioner, to any easement created by implication of law in favor of their estates in the streets and ways provided for in the plan.

Neither does it seem to me that the easements can be separated one from another, so that it can be fairly said, as is contended, that the respondents are at least entitled to the benefit of air and prospect in the road shown on the original plan and running along the margin, or near the margin, of the ocean. That road could neither be located nor constructed as shown on the plan, and its use for the purposes of the respondents is fairly dependent upon the existence of the original scheme as a whole. Persons other than the petitioner have been allowed by the respondents to buy and improve portions of the original tract in the only way in which they could be improved, namely, by a total disregard of the plan; and to acquire rights and estates hostile to the whole scheme of the plan by adverse use and occupation. I do not think that the respondents are in a position to demand that the petitioner be prevented from making use of his property as a matter of right equally with others whom they have permitted, if their contention is sound, to do so as a matter of wrong.

The case does not seem to me to be in any way parallel to the familiar cases in the books, or within the usual technical rules, or one in which any of the essential elements of estoppel can properly be invoked. So far as the claim of easements in favor of the land of any of the respondents over the premises claimed by the petitioner is concerned, I find for the petitioner, and order a decree free from any easements.                     Decree accordingly.

N. M. Nye for petitioner.

C. H. Johnson, T. H. Buttimer, A. P. Worthen for respondents.